UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CHAMBERS OF<br>J. FREDERICK MOTZ<br>UNITED STATES DISTRICT JUDGE | 101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-0782<br>(410) 962-2698 FAX |

May 17, 2005

Memo To Counsel Re: Joseph Schultz v. Christopher Braga, et al.
                        Civil No. JFM-03-556

                        Kristen Harkum v. Christopher Braga, et al.
                        Civil No. JFM-03-562

Dear Counsel:

    As you know, at the conclusion of the hearing held on May 13, 2005, I reserved ruling on defendant Braga's motion for summary judgment as to the claim asserted against him by Kristen Harkum. Having now reviewed more carefully the memoranda and authorities pertinent to Braga's defense of qualified immunity as to the claim asserted against him by Harkum, I grant his motion.

    Two of the arguments made by Braga are unpersuasive. First, in order to bring himself within the ambit of cases holding that a *Bivens* action does not lie where an officer inadvertently shoots someone whom he reasonably believes to be a hostage, *see, e.g.*, *Childress v. City of Arapaho*, 210 F.3d 1154 (10th Cir. 2000); *Medeiros v. O'Connell*, 150 F.3d 164 (2d Cir. 1998); *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791 (1st Cir. 1990), Braga contends that he viewed Harkum as Michael Blottenberger's hostage. The fallacy in this argument is that there is at least a genuine issue of material fact as to that assertion. Arguably, the information provided by the FBI's informant might have been somewhat ambiguous as to the role being played by Blottenberger's girlfriend (whom Braga believed Harkum to be). However, the fact that Braga and other agents observed the driver of the car in which they believed Blottenberger was the passenger remain in the parking lot with the motor running while "Blottenberger" went into the 7-11 certainly drew into question whether she was a hostage. Moreover, the undisputed evidence that two agents had their firearms pointed directly at Harkum after the car had been stopped demonstrates that she was being treated as a potential accomplice. Braga's argument made during oral argument that the other agents, like he, deemed Harkum to be a hostage and had their firearms pointed at her in the event that "Blottenberger" might command her to accelerate for the purpose of escaping from the scene can only be characterized as unseemly. One can only hope that the other agents would not have shot Harkum if she accelerated in response to a command from "Blottenberger" if they believed she was a hostage.

    Second, in my judgment Braga's reliance upon *Rucker v. Harford County*, 946 F.2d 278 (4th Cir. 1991), is misplaced. *Rucker* is distinguishable on the ground that there the officer did not know (and had no reason to know) that Rucker was present at the scene as a bystander. In contrast, here Harkum was seated directly next to Schultz in a stopped vehicle, and it was reasonably foreseeable that

a bullet might ricochet and strike her. Accordingly, if that were the only issue, I would find controlling such cases as *Vaughan v. Cox*, 343 F.3d 1323 (11th Cir. 2003); *Craighead v. Lee*, 399 F.3d 954 (8th Cir. 2005); and *Yang v. Murphy*, 796 F. Supp. 1245 (D. Minn. 1992), and reject Braga's qualified immunity claim.

That said, *Vaughan*, *Craighead*, and *Yang* are all distinguishable on the ground that in those cases the plaintiff actually was shot. Here, it is undisputed that Harkum was not shot. She does claim that she was touched by glass shattered by the bullet that hit the windshield after striking Schultz and that she was spattered with Schultz's blood. Although somewhat weak, the evidence upon which she relies (including her own testimony) is sufficient to create a genuine issue of fact on that point. However, that issue of fact is not material. Harkum has not cited any case to support her view that being struck by glass or being spattered by blood constitutes a "seizure" within the meaning of the Fourth Amendment. Although in my view defendants too frequently parse a well established constitutional right (here, a person's right not to have excessive force used against her) into fragmented component parts when asserting a qualified immunity defense, acceptance of Harkum's argument on the seizure question would substantially extend the scope of a Fourth Amendment claim. Thus, Braga's qualified immunity defense is meritorious.

Finally, I find that Harkum's reliance upon *Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) is also misplaced. In *Flores* an officer, after seeking to detain plaintiff because she was parked on the wrong side of the road and because several people fled from the vicinity when he shined a spotlight on her car, shot plaintiff's car as she attempted to drive away in defiance of his commands. Although plaintiff had not herself been shot, the court held that the officer was not entitled to qualified immunity on his excessive force claim because his shooting of the car resulted in "the termination of . . . [plaintiff's] freedom of movement" and therefore constituted a "seizure." *Id.* at 396. Here, in contrast, the car in which Harkum and Schultz were riding had already been stopped by the agents at the time Braga shot Schultz. Therefore, the reasoning of *Flores* does not apply.

For these reasons, Braga's motion for summary judgment as to the claim asserted by Harkum is granted. I will enter a separate order implementing this ruling as well as the other rulings I made at the conclusion of the hearing held on May 13, 2005.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Very truly yours,

/s/

J. Frederick Motz
United States District Judge